# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-1717V
UNPUBLISHED

| | |
|---|---|
| LISA PLAZA,<br><br>                  Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                  Respondent. | Chief Special Master Corcoran<br><br>Filed: August 23, 2023<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Ruling on the Record; Findings of Fact; Influenza ("Flu"); Shoulder Injury Related to Vaccine Administration (SIRVA); |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Sarah Christina Duncan*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT[1]

On December 1, 2020, Lisa Plaza ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on September 27, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons set forth below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Relevant Procedural History

After the claim's initiation, Respondent filed a Rule 4(c) Report opposing compensation. Rule 4(c) Report (ECF No. 26) at 4-7. Petitioner filed a motion for a ruling on the record with regard to entitlement on July 27, 2022. Motion for Ruling on the Record ("Mot."), ECF No. 32. Respondent opposed the motion on October 26, 2022, arguing that Petitioner has not established that onset of her injury was within forty-eight hours of her vaccination, and that she does not meet the severity requirement of the Vaccine Act. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 37, at 4-6.

## II. Petitioner's Medical Records

Petitioner received a flu vaccine in her left shoulder on September 27, 2019. Ex. 1. There is no history of prior left shoulder pain or issues. Ex. 2 at 31-71; Ex. 5; Ex. 6.

On October 22, 2019, Petitioner presented to Brianne Hauser, PA-C, at Family Health, P.C., for an annual exam. Ex. 2 at 25-30. Petitioner reported she had a flu vaccine on September 27 that "caused a lot of pain and weakness in left arm that she is still having." *Id.* at 26. She also reported that the pain was present for "about 4 weeks." *Id.*

More than four months later, on February 6, 2020, Petitioner again reported shoulder pain "since getting a flu shot 9/27/19" to Dr. Adbah Mohamed. Ex. 2 at 19-20. An examination showed limited range of motion secondary to pain but was otherwise normal. Petitioner was diagnosed with "rotator cuff injury vs deltoid muscular weakness/pain" and was advised to see an orthopedist. *Id.* at 20.

Petitioner next sought care from Dr. Marc Milia, an orthopedist, on February 27, 2020. Ex. 3 at 11-15. Petitioner reported the date of her injury was September 27, 2019, and the injury was a "[f]lu shot at Pharmacy." *Id.* at 8. She further noted that she had shoulder pain "ever since" that flu shot. *Id.* at 13. Petitioner was diagnosed with bursitis and received a subacromial steroid injection. *Id.* at 4, 13. She was also referred to physical therapy and advised to return in six weeks.

Petitioner attended three physical therapy sessions between March 11-20, 2020. Ex. 4. At the first one, Petitioner stated that her shoulder pain and weakness began on September 27, 2019, after receiving a flu shot. Ex. 4 at 11. Further, she stated that her pain ranged from 1-6 out of 10 in her left arm. *Id.* Petitioner's therapy was prescribed as three times per week for four weeks. *Id.*

Petitioner has submitted an affidavit in support of her claim, dated December 2, 2020. Ex. 7. Therein, she states that she had a flu vaccine on September 27, 2019, and began feeling pain that same day. *Id.* at 1-2. Petitioner also explained that she attended three physical therapy sessions "before the state of Michigan issued a stay-at-home order due to the COVID-19 pandemic", and subsequently performed exercises at home. *Id.* at 1. However, she "continue[s] to experience painful range of motion." *Id.* at 2.

A supplemental affidavit, dated April 1, 2021, stated that Petitioner felt uncomfortable during her final March 20, 2020 physical therapy session due to COVID concerns because "no one was wearing masks yet." Ex. 8 at 1.

### III. Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Severity Requirement

The first issue to be resolved is whether Petitioner has demonstrated that she suffered "residual effects or complications of [the injury alleged] for more than six months

after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

There is no dispute that Petitioner received the flu vaccine on September 27, 2019, and she therefore must demonstrate by preponderant evidence that her residual symptoms continued at least through March 27, 2020. *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's Guillain-Barré syndrome resolved less than two months after onset).

Respondent argues that Petitioner's records only establish treatment through March 20th - one week short of six months post-vaccination. Opp. at 5. Further, the March 20, 2020 record does not include an assessment of Petitioner's condition. Petitioner asserts in response that her shoulder pain did not resolve in that one-week interval. Mot. at 9-10. Further, she notes that residents of Michigan were subject to a "stay home, stay safe" Executive Order on March 24, 2020, urging residents to suspend activities that were not "necessary to sustain or protect life" due to the COVID-19 epidemic. *Id.* citing https://www.michigan.gov/whitmer/news/state-orders-and-directives/2020/03/23/executive-order-2020-21 (last visited August 22, 2023). Additionally, Petitioner asserts that she continued to perform at-home exercises following her final physical therapy session. Ex. 7.

Petitioner's medical record from March 11, 2020 (less than three weeks before the severity "cut off") indicates that she was experiencing moderate pain ranging from 1-6 out of 10. Ex. 4 at 11. While it is true that the subsequent March 20, 2020, record does not provide details regarding the severity of Petitioner's injury, she underwent treatment for over one hour. Ex. 4 at 6. It is more likely than not that Petitioner's symptoms were still present one week later, on March 27, 2020. Further, while Petitioner was prescribed additional physical therapy, it is reasonable that she did not attend due to demonstrated concerns about COVID at that time, including the statewide stay-at-home order she references. Petitioner's affidavit also supports her contention that she continued to experience left shoulder pain for some time afterward. Ex. 8.

I thus find severity is established on this record. While it is nevertheless likely on the same record that her SIRVA was not as severe as others and required less treatment, that can be taken into account in calculating damages.

### B. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion, and I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

#### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first sought treatment approximately one month after her September 27, 2019 vaccination, and at that time she affirmatively linked her arm pain to the vaccination. She thereafter consistently reported to treaters that she had experienced symptoms *since* the vaccination. *See, e.g.,* Ex. 2 at 26 (October 22, 2019, record stating left shoulder pain starting her flu vaccine "caused a lot of pain and weakness in left arm that she is still having"); Ex. 2 at 19 (February 6, 2020 record stating that Petitioner experienced shoulder pain "since getting a flu shot 9/27/19"); Ex. 3 at 13 (February 27, 2020 record stating that Petitioner had should pain "ever since" the September 27, 2019 flu vaccine).

Respondent argues that Petitioner's statements are vague, and only stand for the conclusion that her pain began at some unspecified time after receiving the flu vaccine. Opp. at 5-6. But even so, these statements are not *inconsistent* with a proper Table onset (and indeed could be reasonably construed as supporting Table onset). A finding of proper onset can be made based on such a record; Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested.

Further, the relevant medical records show that Petitioner reported shoulder pain "since" the vaccination in a relatively timely manner, when measured from the date of vaccination. Thus, Petitioner first began to identify the vaccine as the start of her pain less than one month post-vaccination – not immediately, but not wholly in an attenuated and untimely period either. It is common for SIRVA petitioners to delay seeking treatment,

thinking the injury will resolve on its own, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after. And individuals also often misconstrue the nature of their injury, and therefore fail to inform treaters of all specific facts relevant to onset until later. Here, the added detail of onset did not "wait" for months before being provided, but began to be reported in a reasonable time post-vaccination. And Petitioner affirmatively and repeatedly linked her shoulder pain to the September 27, 2019 flu vaccine.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to her Left Shoulder

Petitioner's pain was limited to her left shoulder. See Ex. 2 at 25-30. Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

### C. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on September 27, 2019, in the United States. Ex. 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for his injury. Ex. 7; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

In view of the record, I find preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA, and that Petitioner is entitled to compensation.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
